**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

                              Case No. 08-34321

SHAFI JAMAL KEISLER
KELLY LYNNE DICKENS

        Debtors

**MEMORANDUM ON ADEQUACY
OF THE DEBTORS' FIRST AMENDED
DISCLOSURE STATEMENT FILED MAY 13, 2009**

**APPEARANCES:**     JENKINS & JENKINS ATTORNEYS, PLLC
      Michael H. Fitzpatrick, Esq.
      2121 First Tennessee Plaza
      800 South Gay Street
      Knoxville, Tennessee  37929-2121
      Attorneys for Debtors

                     JAMES KELLY GIFFEN, ESQ.
      9724 Kingston Pike
      Suite 702
      Knoxville, Tennessee  37922-6914
      Attorneys for Mission Compound, LLC, Courmont & Wapner Associates,
      LLC, Dr. R. Glenn Hall, Fundacion Galvez, James Hall, John Bracken,
      Jordan E. Glazov and Sheila N. Glazov, and Kenneth and Ellen Nibali Trust

                     RICHARD F. CLIPPARD, ESQ.
      UNITED STATES TRUSTEE
      Patricia C. Foster, Esq.
      800 Market Street
      Suite 114
      Knoxville, Tennessee  37902
      Attorneys for United States Trustee

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

A hearing was held on May 21, 2009, to consider the adequacy of the First Amended Disclosure Statement filed by the Debtors on May 13, 2009, in conjunction with the First Amended Plan of Reorganization filed the same day. The Objection By Mission Compound LLC, Courmont & Wapner Associates, LLC, Dr. R. Glenn Hall, Fundacion Galvez, James Hall, John Bracken, Jordan E. Glazov and Sheila N. Glazov, and Kenneth and Ellen Nibali Trust to the Debtors' Disclosure Statement Dated May 13, 2009 (Objection) was filed by Mission Compound LLC, Courmont & Wapner Associates, LLC, Dr. R. Glenn Hall, Fundacion Galvez, James Hall, John Bracken, Jordan E. Glazov and Sheila N. Glazov, and Kenneth and Ellen Nibali Trust (collectively, the "Original Bridge Lenders") on June 3, 2009. Following the hearing and pursuant to the Order emanating therefrom, the court reserved ruling pending the filing of the Objection by the Original Bridge Lenders and the Debtors' response, which was filed on June 10, 2009 (Response).

This is a core proceeding. 28 U.S.C. § 157(b)(2)(L).

**I**

The Debtors filed the Voluntary Petition commencing their Chapter 11 case on September 29, 2008. On March 13, 2009, the Debtors filed a Plan of Reorganization and a Disclosure Statement, which was scheduled for a hearing on adequacy on April 30, 2009. Objections to the adequacy of the March 13, 2009 Disclosure Statement were each filed on April 23, 2009, by the United States Trustee, Seward & Kissel LLP, and the Original Bridge Lenders. Thereafter, on May 13, 2009, the Debtors filed the First Amended Plan of Reorganization and First Amended Disclosure Statement, which was scheduled for hearing on May 21, 2009. On May 18, 2009, the United States Trustee

withdrew his objection, and on May 21, 2009, the court entered an order overruling the limited objection of Seward & Kissel LLP for failure to appear and prosecute. Only the Objection filed by the Original Bridge Lenders remains pending.

In Exhibit 3 to the First Amended Disclosure Statement, the Debtors list their assets, consisting of their home located at 267 Kings Grant Road, Maryville, Tennessee, real property located at Lot #6 Willow Lane, Sevierville, Tennessee, a 1/13th share in a condominium located at 1310 Ocean Club, Isle of Palms, South Carolina, cash, security deposits, household goods, books and pictures, wearing apparel, jewelry, sports equipment, IRAs, tax refunds, a note owed by American Gear & Transmission, Inc., vehicles, shelving, farm equipment, farm animals, animal feed and care, miscellaneous, an ownership interest in Wildwood Properties, LLC, and Keisler Engineering, Inc. stock. The Debtors list the equity value of these assets at $380,641.02 and the liquidation value of the equity at $252,341.02.

The treatment proposed for the eleven classes provided for in the Debtors' First Amended Plan of Reorganization (First Amended Plan), also filed on May 13, 2009, is summarized in the First Amended Disclosure Statement as follows:

>Class 1: Administrative expense claims which are to be paid in full upon the effective date of the Plan.
>
>Class 2: The secured claim of Farm Credit which is to be paid according to contract.
>
>Class 3: The secured claim of BB&T which is to be paid according to contract.

Class 4: The claim of Kubota Credit, USA which is partially secured. The secured portion of the claim, $5,000.00, will be paid in full through monthly payments of $200.00 plus 5% interest.

Class 5: The secured claims of creditors who loaned money to American Gear & Transmission, Inc., secured by Mr. Keisler's ownership rights in Keisler Engineering, Inc. Class 5 is impaired and the court will determine the nature, extent, and value of the secured claims making up Class 5. If the claims are fully secured in the stock interest of both Debtors, they will receive a note in the amount of $400,000.00 payable to the class, to be paid quarterly over 132 months with 5% interest and prorated according to the claim amounts. If the claims are not all fully secured by the stock interests of both Debtors, those creditors whose claims are secured by the stock interests of both Debtors will receive a note from Keisler Engineering, Inc. in an amount of the claims determined or $400,000.00, whichever is less, and those creditors whose claims are secured only by the stock interests of Mr. Keisler will be paid the value of their claims as determined by the court in equal monthly payments plus 5% interest over twelve months. Any remaining balances of the claims in this class shall be paid as part of Class 10 as general unsecured claims.

Class 5 is subdivided as follows:

Class 5A, identified as the "Sub-Prime Lenders Group A," consists of claims filed by the Bridge Lenders. These claims are provided the alternate treatment discussed above depending on the decision of the court on the nature, extent, and value of their secured claims.

Class 5B, identified as "Sub-Prime Lenders Group B," consists of Clifford Johnson, Donald Tarr, Edward Drummond, George Kershaw, Joe Brownlee, Jr., John Kerr, Phillip Young, and Tom Raymond. These claims are provided the alternative treatment discussed above depending on the decision of the court on the nature, extent, and value of their secured claim.

Class 6: The "BB&T Wildwood Note" consists of a claim guaranteed by the Debtors which will be paid by "Wildwood" in accordance with the note between the parties, with the Debtors' guaranty to be discharged.

Class 7: The claim of Alcoa Tennessee Federal Credit Union which will be paid $603.10 monthly by Keisler Engineering.

Class 8: The claim of Alcoa Tennessee Federal Credit Union which will be paid $874.85 monthly by Keisler Engineering.

Class 9: All pre-petition nonpriority unsecured claims filed or scheduled for less than $1,000.00, which will be paid in full without interest on the effective date of the plan.

Class 10: All pre-petition nonpriority unsecured claims which are not disputed, contingent, or unliquidated and timely filed before the bar date will receive an unsecured note from Keisler Engineering, Inc. in the amount of $175,000.00 plus 2.09% interest, resulting in monthly payments of $1,581.83 to be paid pro rata for 132 consecutive months beginning thirty days after confirmation, in addition to the net proceeds from the sale of the Debtors' condo interest and unimproved lot and through their 2007 and 2008 tax refunds.

Class 11: The interest of the Debtors which will be "[d]ischarged and vested in property of the estate."

The Debtors propose to fund the First Amended Plan with: (1) an unsecured note in the amount of $175,000.00 from Keisler Engineering, Inc.; (2) the sale of the unimproved Lot #6 Willow Lane, Sevierville, Tennessee, valued by the Debtors at $6,000.00; (3) the sale of the Debtors' 1/13th interest in the Ocean Club condominium in South Carolina, valued by the Debtors at $80,000.00; and (4) tax refunds for tax years 2007 and 2008, valued by the Debtors at $38,857.00.

The Objection of the Original Bridge Lenders is grounded upon the following: (1) the Debtors' valuation of the shares of capital stock of Keisler Engineering, Inc., which has been pledged as collateral for their loans and which the Debtors value at $400,000.00, but which the Original Bridge Lenders contend has a value of more than $2,000,000.00; (2) the unestablished amounts of the secured claims of the Original Bridge Lenders; and (3) the Debtors' failure to disclose that the Original Bridge Lenders have filed a competing plan of reorganization, offering to purchase 17.6964% of the shares of Keisler Engineering, Inc. stock for $400,000.00. In response, the Debtors state that valuation should be resolved at confirmation and that the Original Bridge Lenders have not raised any true adequacy issues.

## II

The adequacy of a disclosure statement is governed by 11 U.S.C. § 1125, which provides that:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.

> The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

11 U.S.C. § 1125(b). As it pertains to § 1125(b), subsection (a) provides the following definitions:

> (a) In this section—
>
> > (1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information; and
>
> > (2) "investor typical of holders of claims or interests of the relevant class" means investor having—
>
> > > (A) a claim or interest of the relevant class;
> > >
> > > (B) such a relationship with the debtor as the holders of other claims or interests of such class generally have; and
> > >
> > > (C) such ability to obtain such information from sources other than the disclosure required by this section as holders of claims or interests in such class generally have.

11 U.S.C. § 1125(a).

Whether a disclosure statement provides adequate disclosure is "'left essentially to the judicial discretion of the court' and . . . 'the information required will necessarily be governed by the circumstances of the case.'" *Mabey v. S.W. Elec. Power Co. (In re Cajun Elec. Power Co.)*, 150 F.3d 503, 518 (5th Cir. 1998) (quoting S. REP. NO. 95-989, at 121 (1978), *reprinted in* 1978

U.S.C.C.A.N. 5787, 5907). Courts determine adequacy on a case-by-case basis, with the following as a "yardstick against which the adequacy of disclosure may be measured":

> (1) the circumstances that gave rise to the filing of the bankruptcy petition; (2) a complete description of the available assets and their value; (3) the anticipated future of the debtor; (4) the source of the information provided in the disclosure statement; (5) a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement; (6) the condition and performance of the debtor while in Chapter 11; (7) information regarding claims against the estate; (8) a liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7; (9) the accounting and valuation methods used to produce the financial information in the disclosure statement; (10) information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor; (11) a summary of the plan of reorganization; (12) an estimate of all administrative expenses, including attorneys' fees and accountants' fees; (13) the collectibility of any accounts receivable; (14) any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan; (15) information relevant to the risks being taken by the creditors and interest holders; (16) the actual or projected value that can be obtained from avoidable transfers; (17) the existence, likelihood and possible success of non-bankruptcy litigation; (18) the tax consequences of the plan; and (19) the relationship of the debtor with affiliates.

*In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990) (quoting *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (citations omitted)). "Generally, a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization," *Cardinal Congregate I*, 121 B.R. at 765, and "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

After review of the First Amended Disclosure Statement, the Original Bridge Lenders' Objection, and the Debtors' Response, the court finds that the First Amended Disclosure Statement contains adequate information. Each portion of the Objection by the Original Bridge Lenders relates to the question of the value of the Keisler Engineering, Inc. stock, which the Original Bridge Lenders argue is significantly understated. Nevertheless, as provided by § 1125(b), valuation is not a necessary component in the determination of whether a disclosure statement contains adequate information. The court's primary concern in the adequacy stage is not whether a plan is feasible or in the best interests of creditors – it is simply whether creditors have been provided with sufficient information to make an informed decision as to whether they should accept or reject the First Amended Plan – and the Debtors have adequately provided such information, disclosing that there is a dispute as to the value of the Keisler Engineering, Inc. stock and proposing alternative treatments depending upon the valuation, which shall be determined by the court in due course. All remaining questions concerning the valuation of the Keisler Engineering, Inc. stock and the amounts of the Original Bridge Lenders' secured claims are strictly confirmation issues.

Furthermore, the Debtors are not required to disclose that the Original Bridge Lenders have filed a competing plan. Aside from the fact that the competing plan was filed on June 1, 2009, after the First Amended Disclosure Statement was filed on May 13, 2009, the accompanying Disclosure Statement also filed by the Bridge Lenders on June 1, 2009, has not yet been determined adequate by the court.[1] In the event that the disclosure statement is determined to contain adequate information, it will be sent to creditors, who will have an opportunity to make their own

---

[1] The hearing on adequacy of the Disclosure Statement filed by the Original Bridge Lenders is scheduled for July 23, 2009.

determinations as to both plans; however, the Debtors are not required to amend once more to disclose the existence of the competing plan.

Having determined that the First Amended Disclosure Statement filed by the Debtors contains adequate information as required by 11 U.S.C. § 1125(b), the court will overrule the Objection filed by the Bridge Lenders and will approve the Debtors' First Amended Disclosure Statement as containing adequate information. In view of the competing Plan filed by the Bridge Lenders and in order to keep the two Plans on the same track, the court will not immediately set a confirmation hearing on the Debtors' First Amended Plan but will set a status conference for July 23, 2009.

An order consistent with this Memorandum will be entered.

FILED:  June 29, 2009

                                  BY THE COURT

                                  */s/ RICHARD STAIR, JR.*

                                  RICHARD STAIR, JR.
                                  UNITED STATES BANKRUPTCY JUDGE